UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CRIMINAL ACTION NO. 23-28-DLB-CJS

UNITED STATES OF AMERICA                                                              PLAINTIFF

V.          **RESPONSE OF THE UNITED STATES IN OPPOSITION
            TO DEFENDANTS' MOTIONS TO DISMISS**

ISAIAH M. SMITH,
DENICO N. HUDSON, and
DEMARCO STURGEON                                                                      DEFENDANTS

\* \* \* \* \*

The United States submits this response in opposition to the Defendants' motion to dismiss. [R. 59: Motion.] As set forth below, the Supreme Court's decision in *New York State Rifle & Pistol Ass'n*, *Inc. v. Bruen*, 142 S. Ct. 2111 (2022), does not overrule precedent upholding the statutes in question. Nevertheless, even if the Court were to consider the issue anew, these statutes remain constitutional after *Bruen* because the weapons at issue fall outside the scope of the protection of the Second Amendment and these restrictions are consistent with our historical tradition of firearm regulation. The Defendants' motions should therefore be denied.

I.      **Factual Background and Procedural History**

On June 8, 2023, a federal grand jury charged the Defendants with two criminal offenses. [R. 3: Indictment at Page ID# 3-7.] Count 1 charges them with possession and transfer of a machinegun, a violation of 18 U.S.C. § 922(o), and aiding and abetting one

another in the commission of this offense. *Id*. Count 2 charges the same group with transporting and receiving an unregistered machinegun, a violation of 26 U.S.C. § 5861(j), and aiding and abetting the commission of this offense.

The Defendants ask the Court to dismiss the Indictment on the basis that the statutes under which each is charged violate their Second Amendment right to bear arms. [R. 40: Motion at 105-108; R. 41: Motion at 110-112; R. 43: Motion at 116-117.]

## II.     Argument

### A.  Prohibiting the possession and transfer of machineguns is constitutional.

In *United States v. Heller*, 554 U.S. 570, 635 (2008), the Supreme Court determined that the Second Amendment protects the right of "law-abiding citizens" to keep firearms in their homes for self-defense. However, this right is not unlimited. *Id.* at 626. *Heller* emphasized that "nothing in [its] opinion should be taken to cast doubt" on certain "presumptively lawful regulatory measures," such as "longstanding prohibitions on the possession of firearms by felons and the mentally ill . . ." *Id*. at 626-27 & n.26. *Heller* also specifically noted that the Court accepted "another important limitation on the right to keep and carry arms" in that the "sorts of weapons protected were those 'in common use at the time.' . . . We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id*. at 627.

One important limitation that *Heller* did not disturb is the result in *United States v. Miller*, 307 U.S. 174 (1939). As *Heller* explained, "The judgment in [*Miller*] upheld against a Second Amendment challenge two men's federal indictment for transporting an unregistered short-barreled shotgun in interstate commerce, in violation of the National

Firearms Act, 48 Stat. 1236." *Heller*, 554 U.S. at 621-622. *Heller* continued that "the Court's basis for saying that the Second Amendment did not apply was . . . that the *type of weapon at issue* was not eligible for Second Amendment protection." *Id*. at 622 (emphasis in original). *Heller* concluded, "We therefore read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the historical understanding of the scope of the right." *Id*. at 625.

After *Heller*, the Sixth Circuit, along with several other circuits, adopted a two-pronged approach to Second Amendment challenges in *United States v. Greeno*, 679 F.3d 510 (6th Cir. 2012) (abrogated by *Bruen*). Under the first step, "the government must show 'that the challenged statute regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment – 1791 [Bill of Rights ratification] or 1868 [Fourteenth Amendment ratification]." *Stimmel v. Session*, 879 F.3d 198, 204 (6th Cir. 2018) quoting *Greeno* at 518. "If the government satisfies its initial burden, 'then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review.'" *Id*. If not, "there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Greeno* at 518.

In 2022, the Supreme Court decided *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), holding that the Second Amendment protects the right of "ordinary, law-abiding citizens" to also "carry a handgun for self-defense outside the home." *Id*. at 2122. Revisiting *Heller*, the Supreme Court observed that, since *Heller*,

3

lower courts had "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combine[d] history with means-end scrutiny." *Id*. at 2125-2126. *Bruen* rejected the "two-step" framework as "one step too many." *Id.* at 2127. However, *Bruen* observed that "[s]tep one is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id*. at 2127. *Bruen* provided that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. at 2126. It is only when a defendant's conduct does fall within the Second Amendment's plain text that the government must then show that "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. In other words, a challenge to a criminal statute on this basis must be rejected if the statute regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment.

While *Bruen* abrogated *Heller*'s means-end scrutiny second step, it did not call into question the constitutionality of laws prohibiting the unregistered possession and transferring of unusual weapons such as machineguns and short-barreled shotguns and rifles. "[W]e found it fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons' that the Second Amendment protects the possession and use of weapons that are 'in common use at the time.'" *Bruen* at 2111.

*Bruen* did not overturn *Miller* and *Heller*. To the contrary, it relied on these decisions. 142 S. Ct. at 2127-28, 2132, 2134-35. *Bruen* reiterated that there is no "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever

4

purpose." 142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 626). Both concurrences in *Bruen* emphasized the narrow scope of its holding. Justice Alito, concurring, wrote that "our holding decides nothing about who may lawfully possess a firearm. Nor have we disturbed anything that we said in *Heller* or [*McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010)] about restrictions that may be imposed on the possession or carrying of guns." 142 S. Ct. at 2157. Justice Kavanaugh, joined by Chief Justice Roberts in a separate concurring opinion, noted that as the Supreme Court had previously explained in *Heller* and *McDonald*, "the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check" and that "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations." *Id*. at 2162.

Multiple courts have relied on *Heller* to conclude that machineguns fall outside the Second Amendment's scope. See, e.g., *Hamblen v. United States*, 591 F.3d 471, 473-474 (6th Cir. 2009) (finding the right to keep and bear arms does not authorize an unlicensed individual to possess unregistered machine guns for personal use); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame*, 822 F.3d 136, 141-144 (3rd Cir. 2016) (Finding "the Second Amendment does not protect the possession of machine guns. They are not in common use for lawful purposes."); *Hollis v. Lynch*, 827 F.3d 436, 449-451 (5th Cir. 2016) (finding that machineguns do not receive Second Amendment protection because they are dangerous and unusual); *United States v. Fincher*, 538 F.3d 868, 873-874 (8th Cir. 2008) (finding machineguns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use);

*United States v. Henry*, 688 F.3d 637, 639-640 (9th Cir. 2012) (finding that short of bombs, missiles, and biochemical agents, few weapons are more dangerous than machineguns and thus the Second Amendment does not apply.) The Fourth Circuit, sitting *en banc*, relied on similar reasoning to hold that semi-automatic assault rifles, like an AR-15 and large-capacity magazines, fell outside the Second Amendment. See *Kolbe v. Hogan*, 849 F.3d 114, 135-137 (4th Cir. 2017). The Fourth Circuit explained: "Are the banned assault weapons and large-capacity magazines "like" "M-16 rifles," i.e., "weapons that are most useful in military service," and thus outside the ambit of the Second Amendment? The answer to that dispositive and relatively easy inquiry is plainly in the affirmative." *Kolbe*, 849 F.3d at 136 (citing *Heller*, 554 U.S. at 627).

In short, in light of binding Supreme Court precedent holding that the Second Amendment protects only those weapons "in common use" by private citizens at the time of its enactment—and the persuasive authority afforded by numerous federal appeals courts extending that conclusion expressly to machineguns—this Court should deny the motion to dismiss because the plain text of the Second Amendment does not cover the possession or transfer of machineguns.

Even if this Court were to conclude that the Second Amendment's plain text protects the possession of machineguns, Section 922(o) still does not violate the Second Amendment because the statute "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30. To assess "whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding," Bruen contemplated two avenues of inquiry: (1) a "straightforward

6

historical inquiry" to search for, most relevant here, historical regulations similar to the modern-day regulatory counterpart at issue or evidence that a comparable historical regulation was rejected on constitutional grounds; or (2) a "historical analogy," for instances where there is no such straightforward correspondence between the challenged law and predecessors. *Id*. at 2131-2134. For purposes of defendant's challenge to Section 922(o), the "straightforward historical inquiry" that *Bruen* described suffices. *Heller* explained, and *Bruen* did not disturb, that this nation's "historical tradition" includes "prohibiting the carrying of dangerous and unusual weapons." 554 U.S. at 637. For example, under English common law, "the offense of riding or going armed, with dangerous or usual weapons, [was] a crime." 4 W. Blackstone, Commentaries on the Laws of England 148–49 (1769). In the United States, too, courts long ago acknowledged that a man commits "an offence at common law" when he "arms himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people." *State v. Langford*, 3 Hawks 381, 383 (NC 1824). For that reason, the Second Amendment encompasses only arms "of the kind in common use." *Heller*, 554 U.S. at 624 (quoting *Miller*, 307 U.S. at 179).

    The common-use limitation is consistent with the Second Amendment's prefatory clause: "The traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense." *Heller*, 554 U.S. at 624. *Heller* recognized that "[i]t may be objected that if weapons that are most useful in [modern] military service—M-16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause" that refers to

7

militias. *Id*. at 627-628. But *Heller* explained that "the fact that modern developments have limited the degree of fit between the prefatory clause and the protected right cannot change our interpretation of the right." *Id*. at 628. *Bruen* did not change this aspect of *Heller*. Instead, *Bruen* reaffirmed *Heller*'s finding there is a "fairly supported" "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Bruen*, 142 S. Ct. at 2128 (citing 4 W. Blackstone, Commentaries on the Laws of England at 148-149: *Miller*, 307 U.S. at 179).

In light of *Heller*'s conclusion that our nation's historical tradition includes regulating dangerous and unusual firearms, this Court should reject the Defendants' constitutional challenge to Section 922(o) on historical grounds, assuming it does not already conclude that the plain text of the Second Amendment does not cover the possession of machineguns. Multiple federal opinions prepared post-*Bruen* have concluded as much.[1] The United States is not currently aware of any opinions to the contrary.

### B. The NFA regulatory requirement of registration is constitutional.

If, as discussed above, Congress has the authority to ban the possession and transfer of machineguns, it certainly has the power to require registration of those weapons. The Sixth Circuit has held that the registration provisions of the NFA, including 28 U.S.C. § 5861, are permissible incidents to the legislative taxing power,

---

[1] *United States v. Kittson*, No. 3:21-cr-75, 2023 WL 5015812 (D. Ore. August 7, 2023); *United States v. Cooperman,* No. 22-cr-146, 2023 WL 4762710 (N.D. Ill. July 26, 2023); *United States v. Simien,* No. 5:22-cr-379, 2023 WL 1980487 (W.D. Tex. February 10, 2023).

8

because registration facilitates the collection of taxes on the making and transfer of firearms.  *United States v. Birmley,* 529 F.2d 103, 106-107 (6th Cir. 1976).

*United States v. Bournes*, 339 F.3d 396, 399 (6th Cir. 2003) rejected a due process challenge to this statute and noted that a defendant could comply with both 18 U.S.C. § 922(o) and 26 U.S.C. § 5861 simply by electing not to possess machineguns.

### III. Conclusion

For the foregoing reasons, the Defendant's motion should be denied.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

By: /s/ Anthony J. Bracke
Assistant United States Attorney
207 Grandview Drive, Suite 400
Ft. Mitchell, Kentucky 41017
(859) 655-3200
FAX (859) 655-3212
Anthony.Bracke@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023, I filed the foregoing using the CM/ECF system, which will automatically send a notice of electronic filing to counsel for each Defendant.

/s/ Anthony J. Bracke
Assistant United States Attorney